UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RAYMOND ACRES,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE LAKE RANCHERIA TRIBAL COURT, et al.,<br><br>    Defendants. | Case No. 16-cv-02622-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 32, 33 |

## INTRODUCTION

Plaintiff James Acres seeks declaratory and injunctive relief against defendants Blue Lake Casino & Hotel ("BLC&H"), the Blue Lake Rancheria tribal court, tribal judge Lester Marston, and Anita Huff ("Clerk Huff"), asserting that the tribal court lacks jurisdiction over him in an underlying contractual dispute and that the individual court employees exceeded their authority during the pendency of the tribal action. Defendants move to dismiss to require Acres to exhaust his tribal remedies. Mot. [Dkt. No. 32].[1] Because tribal court jurisdiction is at least colorable, not futile, and neither motivated by a desire to harass nor conducted in bad faith, Acres is required to exhaust his tribal remedies before bringing his lawsuit in federal court, and defendants' motion is GRANTED.

## BACKGROUND

Acres is an employee and president of Acres Bonusing, Inc. ("ABI"), a California distributor for Talo, Inc. Compl. ¶¶ 4, 12 [Dkt. No. 1]. BLC&H sued Acres and ABI in Tribal Court Case Number C-15-1215LJM, on January 12, 2016. *Id.*, Exh. 5. That case concerns an agreement into which ABI and Acres entered with BLC&H for the purpose of providing BLC&H

---

[1] The tribal court, Judge Marston, and Clerk Huff filed a notice of joinder to BLC&H's motion to dismiss. DKt. No. 33.

with the iSlot Platform, a casino gaming platform developed by Talo, Inc. (the "iSlot Agreement"). *Id.* ¶¶ 10, 11. BLC&H's complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent inducement. *Id.*, Exh. 5.

On January 17, 2016, Acres was served with the summons and complaint in the tribal action. *Id.* ¶ 25. The summons directed Acres to respond within "five (5) days after service under pain of Default Judgment." *Id.* ¶ 26. On January 22, 2016, Acres went before the tribal court to make specially appear for himself and ABI, asserting that the court lacked jurisdiction to proceed with the underlying tribal action. *Id.* ¶ 28. On January 25, 2016, Clerk Huff notified Acres via email that his special appearances were rejected because they did not comply with tribal court's procedural rules. *Id.* ¶ 29. The next day, Acres resubmitted his special appearances. *Id.* ¶ 30. On February 16, 2016 Judge Marston issued an order rejecting the special appearances and listing the ways in which the filings did not conform to the tribal court's rules. *Id.* ¶ 33; Exh. 16. The order provided Acres with 30 days to file an answer or responsive pleading. *Id.* ¶ 33.

On March 9, 2016, Acres and ABI filed the instant action in federal court, alleging that it is "not possible for the Tribal Court to provide due process to non-members Acres" and that "because the tribal court answers to the Tribe's Business Council, and the Business Council derives significant revenue for the Tribe from BLC&H, it is unreasonable to expect the Tribal Court to be an impartial arbiter in [this] dispute." *Id.* ¶ 50. Acres also asserts that he never consented to tribal jurisdiction and that "[b]y the Tribe's own rules, [he] is clearly not subject to the Tribe's jurisdiction because he has never done business with the Tribal Court's territorial jurisdiction as a natural person." *Id.* ¶¶ 61, 57.

Acres's complaint presents five claims for declaratory and injunctive relief: (i) a declaration that the iSlot Agreement does not establish tribal jurisdiction over non-members of the tribe; (ii) a declaration that the tribal court cannot provide due process in cases involving tribal plaintiffs and non-tribal defendants; (iii) a declaration that Clerk Huff exceeded her authority by issuing the five-day summons; (iv) a declaration that Judge Marston exceeded his authority by issuing the February 24, 2016 order; (v) a declaration that defendants "went outside the bounds of

1 tribal law" by serving the five-day summons and bringing the underlying suit; and (vi) injunctive
2 relief prohibiting defendants from continuing the prosecution of the underlying tribal action. *Id.*
3 ¶¶ 71-84. Defendants moved to dismiss, and I heard argument on July 20, 2016.

## DISCUSSION

Although defendants make several arguments, this Order focuses on whether this court lacks jurisdiction because Acres has not exhausted his tribal remedies. On this threshold issue, I agree with defendants.

"Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction." *Elliott v. White Mountain Apache Tribal Court,* 566 F.3d 842, 846 (9th Cir. 2009). However, as a matter of comity, before bringing suit in federal court non-Indians must generally first exhaust tribal remedies. *Id.* at 846. The Supreme Court recognizes four exceptions to this requirement: "(1) when an assertion of tribal court jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) when the tribal court action is patently violative of express jurisdictional prohibitions; (3) when exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction; and (4) when it is plain that tribal court jurisdiction is lacking, so that the exhaustion requirement would serve no purpose other than delay." *Id.* at 847 (internal quotation marks, citations and modifications omitted). As to the fourth exception, if the tribal court's jurisdiction is "colorable" or "plausible," the district court is required to dismiss or abstain. *See Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008).

Acres asserts that because the first, third, and fourth exceptions apply he is not required to exhaust tribal remedies. Oppo. 12 [Dkt. No. 40]. I consider each argument in turn.

### I. BAD FAITH

Acres rests his arguments concerning the tribal court's bad faith on: (i) issuance of the initial summons that incorrectly provided him with only five days to respond; (ii) Judge Marston's joinder in the present motion to dismiss; and (iii) an "ambiguously scheduled" case management conference. Oppo. at 16-17. His arguments are not well taken.

The mistaken five day summons was not issued in bad faith, even though one can see why

3

Acres got frustrated. Clerk Huff's declaration explains that she incorrectly applied the standard for unlawful detainer matters rather than the timeline for standard civil litigation. Huff Decl. ¶ 8 [Dkt. No. 32-4]. Acres attempted to respond within the five day deadline by emailing a pleading entitled "Special Appearance" to the court on January 22, 2016, but Clerk Huff replied via email explaining that his filings did not conform to the tribal court local rules. Compl., Exh. 13. Acres then followed up by emailing another "Special Appearance" filing which attempted, but failed to address the identified errors. Compl., Exh. 14. The court responded to his secondary filings in its February 16, 2016 order that described why the tribal court rejected the documents and provided him with thirty days from the issuance of the order to respond in a manner that was compliant with the court's rules. Compl., Exh. 16. *Id*. Acres then filed documents entitled "Joint Request for Clarification Regarding Feb 16 Order by Judge Marsten [sic]" and a "Notice of Jurisdiction Barrier to Co-operation with Case Management Statement and Conference," Dkt. No. 11, Exh. 7, which the tribal court accepted despite their procedural deficiencies. *Id*. On the same day, Clerk Huff notified the plaintiffs in the tribal court action that the five day summons was issued in error and instructed them to serve Acres with a corrected, 30-day summons. Dkt. No. 11, Exh. 8. Considering the court's acknowledgement of its mistake, the guidance it provided to Acres, the extensions of time it granted, and its acceptance of documents despite their procedural deficiencies, a finding of bad faith based on the five day summons is unwarranted.

Acres's other claims do not support a finding of bad faith either. Acres named Judge Marston as an individual defendant in this lawsuit. The judge's joinder in BLC&H's motion to dismiss does not, as Acres argues, demonstrate his belief that Acres or ABI are at fault in the underlying tort action. No view on the underlying action is expressed in either the joinder or the motion to dismiss. And, even assuming there was some ambiguity as to the date of a case management conference scheduled in the tribal court action, Acres offers no reason to believe the ambiguity arises from bad faith. *See* Dkt. No. 20, Exh. 3 (continuing the May 13, 2016 conference to the "first Friday at least fourteen (14) calendar days following the date an order is issued" in the district court case); Dkt. No. 21 (issuing the order on a Friday).

## II. FUTILITY

A party is excused from exhausting claims in tribal court when exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction. *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1203 (9th Cir. 2013). This exception is generally applied in only the most extreme cases. *Id*. This is not one of those cases.

Acres asserts that the tribal court is "incapable" of providing due process and that challenging jurisdiction in that court is futile considering that he has already made "strenuous good-faith efforts to make Special Appearance." Compl. at ¶¶ 67-69. But Acres's special appearance and pleadings did not conform to the procedural rules of the court. The tribal court issued several orders, including on February 16, 2016 and March 25, 2016, that provide in lengthy detail how his filings were defective. Compl., Exh. 16; Dkt. No. 11, Exh. 7. Despite the deficiencies of his filings, Acres was provided with extensions of time and his filings were ultimately accepted despite their defects. *Id*. The tribal court's initial refusal to accept non-compliant filings does not demonstrate futility. Based on the record before me, there is no reason to question defendants' representation that "Acres and ABI have a full and fair opportunity to challenge the Tribal Court's jurisdiction before the Tribal Court[] itself." Mot. at 18.

## III. COLORABLE BASIS FOR TRIBAL JURISDICTION

To determine whether the fourth exception to tribal court exhaustion (whether tribal court jurisdiction is plainly lacking) applies, my job is not to conclude with certainty that the tribal court has jurisdiction, but only whether jurisdiction is "colorable or plausible." *Elliott*, 566 F.3d at 848 (internal quotation marks and citations omitted). In *Montana v. United States*, 450 U.S. 544, 565 (1981), the Supreme Court stated the general rule that, absent congressional direction, the inherent sovereign powers of an Indian tribe do not extend to the conduct of nonmembers of the tribe on non-Indian land. But the Court recognized two exceptions: (i) "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements;" (ii) "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some

1   direct effect on the political integrity, the economic security, or the health or welfare of the tribe."
2   *Montana*, 450 U.S. at 565-66 (citations omitted).

3      A colorable or plausible basis for jurisdiction exists in this case based on the first *Montana*
4   exception, which "allows a tribe to exercise jurisdiction over the activities of nonmembers who
5   enter into a consensual relationship with a tribe." *Big Horn Cty. Elec. Co-op., Inc. v. Adams*, 219
6   F.3d 944, 951 (9th Cir. 2000). "Deference to tribal courts is required when the disputed issue
7   'arises on the reservation' or involves a 'reservation affair' and no exceptions to the exhaustion
8   rule exist." *Landmark Golf Ltd. P'ship v. Las Vegas Paiute Tribe*, 49 F. Supp. 2d 1169, 1175 (D.
9   Nev. 1999) (internal modifications and citations omitted).

10     A consensual relationship between Acres and BLC&H was created when the parties signed
11  the iSlot Agreement.[2] Acres asserts that because the agreement was executed in San Diego
12  County, presumably off the reservation, the contract cannot serve as the basis for jurisdiction.
13  Oppo. at 14. But beyond a notation in the contract of ABI's address in Encinitas, California, there
14  is no firm indication that the contract was signed by Acres in Encinitas, nor is there any evidence
15  of where BLC&H executed the agreement. *See* Compl., Exh. 7. Defendants assert that Acres was
16  present on tribal lands multiple times to negotiate the agreement and discuss payment under the
17  contract. Mot. at 22 (citing Frank Decl., Dkt. No. 9-4). Consideration of the other elements of the
18  case – including that the iSlot Agreement involved a tribal gaming corporation, it was performed
19  in the casino on tribal lands, and it implicated the tribe's ability to conduct its business affairs –
20  weigh in favor of a finding of tribal jurisdiction. *See Admiral Ins. Co. v. Blue Lake Rancheria*
21  *Tribal Court*, No. 5:12-cv-01266-LHK, 2012 WL 1144331, at *4 (N.D. Cal. Apr. 4, 2012)
22  (finding a colorable basis for tribal jurisdiction despite the plaintiff's arguments that the policy at
23  issue was issued and entered into off tribal lands); *see also Landmark Golf Ltd. P'ship*, 49 F.
24  Supp. 2d at 1175 ("The alleged misrepresentations may have occurred off the physical boundaries

---

[2] Despite Acres's arguments to the contrary, there is no requirement that a party must explicitly consent to tribal jurisdiction in its contract with the tribe. *Montana*'s clear wording allows a tribe to regulate "nonmembers who enter consensual relationships with the tribe or its members, through . . . contracts." *Montana*, 450 U.S. at 565. If the Supreme Court had desired to require parties to explicitly consent to tribal jurisdiction, they would have said so.

of the reservation in no way undermines the inescapable conclusion that a decision on the merits of this case will have a direct impact on the property interests and future economic activity of the Tribe.").

To be clear, I am not making a finding that the tribal court has jurisdiction, only that it is plausible that it does, and that Acres and ABI must exhaust tribal remedies before seeking to litigate in this court. Based on the limited record before me, the tribal court does not "plainly" lack jurisdiction so as to excuse Acres from exhausting tribal remedies. *Grand Canyon Skywalk Dev., LLC*, 715 F.3d at 1203. The orderly administration of justice will be served by allowing the tribal court to make a decision regarding its jurisdiction on a full record. *See Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) ("The orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed."). Accordingly, because Acres has failed to exhaust tribal remedies, I grant the motion to dismiss.[3]

## CONCLUSION

Defendants' motion to dismiss for lack of subject matter is GRANTED.[4] This case is DISMISSED and the Clerk shall close the case.

**IT IS SO ORDERED**.

Dated: August 10, 2016

WILLIAM H. ORRICK
United States District Judge

---

[3] Because I am granting the motion to dismiss on this basis, I do not address the defendants' tribal sovereign immunity arguments. *See Admiral Ins. Co*, 2012 WL 1144331, at *2 (denying the plaintiff's temporary restraining order on failure to exhaust grounds and declining to address the defendants' sovereign immunity).

[4] Defendants' request for judicial notice of documents related to the status of the Blue Lake Rancheria is denied as MOOT. Dkt. No. 32-1.